J. W. DIXON v. JAMES C. DAVIS, DIRECTOR GENERAL OF RAILROADS.

(Filed 25 October, 1922.)

1. **Pleadings — Allegation — Evidence — Fraud — Mistake — Carriers of Goods—Bills of Lading—Contracts.**

Where the plaintiff has signed a livestock bill of lading for intrastate shipment, without stipulation as to time of the delivery of the shipment, and seeks to recover damages upon a contemporary verbal agreement made with him by the agent that the stock would be received at destination within a specified time, in the absence of allegation of fraud or mistake, he will not be permitted to show that he was induced to sign the livestock bill of lading by the agent instead of a different one, that he thought he was signing, and had thus signed the one excluding evidence of the parol agreement he relied upon by mistake.

2. **Carriers of Goods—Bills of Lading—Agreement as to Time of Bringing Action—Limitation of Actions.**

In the absence of any unusual or extraordinary circumstances, an agreement between the common carrier and its shipper may fix a reasonable period within which the shipper shall bring action for damages caused by the carrier's breach of its duty to transport the shipment, which will prevail in its enforcement over a longer time fixed by the general statute of limitations.

3. **Judgments—Issues—Verdict—Carriers of Goods—Bills of Lading—Notice—Agreement as to Action.**

Where, in an action by the consignor against the carrier to recover in an intrastate shipment of livestock, the issues are raised whether the provisions of a livestock bill of lading, under which the shipment was made, had been complied with by the consignor, as to giving written notice, etc., to the carrier of the damages he claims in his action, or whether he has instituted his action within the time specified in the bill of lading, it is required that both of these issues be answered by the jury upon the evidence in order that a judgment may be rendered in the consignor's favor.

4. **Same—Instructions.**

In an action to recover damages upon a livestock intrastate shipment, the necessity of the jury to answer the issues relating to notice to the carrier of the damages claimed, and the time of bringing the action under the agreement therein set out, is not eliminated by the jury's answer to another issue upon which the judge has instructed the jury that the defendant had waived these requirements of the shipping contract.

APPEAL by defendant from *Devin, J.,* at May Term, 1922, of WAKE.

Civil action to recover damages for an alleged negligent delay and injury in transit to a car-load shipment of livestock, consisting of 49 hogs and one pony.

Upon denial of liability and traverse thus joined, the following issues were submitted to the jury and partly answered by them as indicated:

"1. Did the defendant contract and agree to transport and deliver shipments of hogs from Raleigh to Farmville in time for sale on 28 February, as alleged in the complaint? Answer: 'Yes.'

"2. Did the defendant fail to perform said contract? Answer: 'Yes.'

"3. Did plaintiff suffer loss and damage with respect to said shipment of hogs by reason of the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"4. What damage, if any, is plaintiff entitled to recover therefor? Answer: '$1,350.'

"5. Did the plaintiff contract that as a condition precedent to any right to recover any damages for loss or injury to said livestock, notice in writing of the claim therefor should be given to the agent of the carrier actually delivering said livestock whenever such delivery might be made, and that such notice should be given before said livestock was removed, or was intermingled with other livestock? Answer: 'No.'

"6. Was said provision of said contract of shipment complied with by the plaintiff? Answer: ..................

"7. Did the plaintiff contract that no suit or action for the recovery of any claim for damages, loss, injury, or delay to the livestock should be brought against the carrier unless begun within ninety days from the happening thereof? Answer: ..................

"8. Was said provision complied with by the plaintiff? Answer: .................."

Verdict on the judgment in favor of plaintiff, and the defendant appealed.

*Douglass & Douglass for plaintiff.*
*R. N. Simms for defendant.*

STACY, J. On Thursday, 26 February, 1920, the defendant placed a car at Edgerton's Siding, Raleigh, N. C., to be used in transporting and carrying 49 hogs and one pony for the plaintiff to Farmville, N. C. Plaintiff had advertised said hogs for sale at one o'clock on Saturday, 28 February, 1920. This fact, it is alleged, was communicated to the defendant's agent, and he assured the plaintiff that said shipment would be delivered in Farmville in ample time for the sale as advertised. The livestock did not reach Farmville until some time Saturday night, and was unloaded early Sunday morning. This action is brought to recover damages for delay in transit and resultant injury arising therefrom.

Plaintiff bases his action on an alleged oral contract made with the defendant; and the first issue is addressed to the finding of this fact,

which was denied by the defendant. *Smith v. R. R.,* 163 N. C., 143; *Hamilton v. R. R.,* 96 N. C., 402. At the trial plaintiff admitted signing a special livestock contract, containing certain limitations and provisions in regard to his right to maintain an action like the present, and the fifth, sixth, seventh, and eighth issues were directed to questions appropriately arising therefrom.

There was evidence on behalf of the plaintiff tending to show that he thought he was signing a regular bill of lading rather than a special livestock contract. He testified as follows: "I did not sign but one paper for the railroad company. They gave me a bill of lading. . . . It was different from this paper. I did not have any idea what I was signing when I signed that paper."

By the court: "Q. You say that is your signature to the paper, and you can read and write? A. Yes.

"Q. Why did you not read over the paper? A. I just did not take time to read over the paper."

As bearing upon this phase of the case, his Honor charged the jury as follows: "The plaintiff has admitted, upon being shown the paper, that he signed the paper which has been offered in evidence; but the plaintiff's contention is that he was told to sign a paper of a different character, a bill of lading, and that he was misled by the act of the agent of the defendant into signing a different paper, and, though he was able to read and write, he had no opportunity to do so, and was misled as to the character of the paper he was signing, and therefore he is not bound by the written paper which bears his signature."

Defendant excepted to this portion of the charge, and contended, first, that there was no allegation of any fraud or mistake in the execution of the contract; and, second, that the evidence offered by the plaintiff was not sufficient to warrant the foregoing instruction. We think the exception must be sustained, certainly upon the first ground *(Graves v. Trueblood,* 96 N. C., 498), if not upon the second. Proof without allegation is as unavailing as allegation without proof. *McCoy v. R. R.,* 142 N. C., 383. There was no stipulation in the written contract calling for delivery of the shipment at any particular time; and across the face of said instrument was stamped the following: "Read this contract. It is agreed that this contract contains the entire bargain between the shipper and the company, and that no conversation between owners or attendants of the livestock shipped hereunder and representatives of the company shall alter, vary, or add to said contract or be valid."

Sections 8 and 11 of the written contract were as follows:

"8. That as a condition precedent to any right to recover any damage for loss or injury to said livestock, notice in writing of the claim therefor shall be given to the agent of the carrier actually delivering said livestock

wherever such delivery may be made, and such notice shall be so given before said livestock is removed or is intermingled with other livestock."

"11. No suit or action for the recovery of any claim for damages, loss, injury, or delay to the livestock shall be brought against any carrier, and only against the carrier on whose line the injury or delay occurred, unless begun within ninety (90) days from the happening thereof, and if begun later the lapse of time shall be conclusive evidence against the validity of such claim, any statute of limitations to the contrary notwithstanding."

It will be observed that the jury failed to answer the sixth, seventh, and eighth issues, the seventh issue being directed to the above provisions of the 11th section of the contract. This matter is not covered by the fifth issue, for the court practically instructed the jury that, under the evidence (which was not essentially unlike that in the case of *Horse Exchange v. R. R.,* 171 N. C., 65), the requirements of the provisions of the 8th section of the contract had been waived. *Schloss v. R. R.,* 171 N. C., 350; *Mewborn v. R. R.,* 170 N. C., 210; *Baldwin v. R. R.,* 170 N. C., 12, and *Kime v. R. R.,* 160 N. C., 457. The verdict, therefore, was incomplete, and, in any event, the cause must be remanded for a new trial. This was not an interstate shipment, as was the case of *Bryan v. R. R.,* 174 N. C., 177.

It is established by the clear weight of authority that the parties to a contract of shipment may fix a given time, shorter than that allowed by the general statute of limitations, within which suit for breach of the contract shall be brought, and, in the absence of any unusual or extraordinary circumstance, such a stipulation, if reasonable, will be enforced. *Thigpen v. R. R., ante,* 33, and cases there cited. The present suit was commenced by the issuance of summons on 18 December, 1920, more than nine months after the alleged breach of contract occurred.

New trial.