DAISY CHINNIS, ADMINISTRATRIX OF THE ESTATE OF HELEN BRINSON, DECEASED, v. ATLANTIC COAST LINE RAILROAD COMPANY AND MRS. ETTA RUSS.

(Filed 7 May, 1941.)

**1. Appeal and Error § 39—**

Where it is determined on appeal that defendant's motion for judgment as of nonsuit should have been allowed, errors, if any, in the admission or exclusion of evidence or in the charge of the court, are harmless.

**2. Railroads § 9—Upon evidence in this case, negligence of driver was sole proximate cause of accident at crossing.**

The evidence tended to show that plaintiff's intestate was riding as a guest in a car which was being driven at night at a speed of about 60 miles per hour along a straight, hard surfaced highway, approaching defendant's railroad crossing, that the view of the crossing itself was unobstructed for a distance of 225 feet or more, and that the automobile crashed into the rear of the 42nd car of defendant's freight train after the engine and 41 cars, traveling at a speed of about 15 miles per hour, had already passed over the crossing. Skid marks on the highway started about 200 feet from the crossing. *Held:* The evidence discloses as a matter of law active negligence on the part of the driver intervening after any alleged negligence on the part of the engineer in failing to give warning of his approach to the crossing by sounding the bell or blowing the whistle, which negligence of the driver continued to operate to the instant of injury, and therefore the negligence of the driver was the sole proximate cause of the injury, and defendant railroad company's motion for nonsuit should have been allowed.

**3. Same—**

Where the evidence discloses that the driver of an automobile traveling about 60 miles per hour crashed into the 42nd car of defendant's freight train after the engine and 41 cars, traveling at about 15 miles per hour, had already passed over the crossing, and that the view of the crossing itself was unobstructed for 225 feet or more, the fact that the railroad company

had left a tank car on either side of the crossing so as to obstruct the view of approaching trains, cannot be held a proximate cause of the collision.

**4. Same—**

The evidence disclosed that the accident in suit occurred where defendant's tracks crossed at a grade a short paved highway connecting two other highways, that the connecting highway, although a public road, was not a thoroughfare, that it was in a rural section, and that there were only a few houses and no unusual amount of travel along the two miles of the road's extent, and there was no evidence of unusual or hazardous conditions existing at the crossing. *Held:* It was not the duty of the railroad to provide signal lights or a watchman at the crossing late at night.

APPEAL by plaintiff from *Williams, J.,* at October Term, 1940, of NEW HANOVER. No error.

This was an action for wrongful death resulting from collision between an automobile in which plaintiff's intestate was riding and a freight train of defendant railroad company. Voluntary nonsuit was entered as to defendant Russ. Upon issues submitted, the jury answered the issue of negligence in favor of the defendant railroad. From judgment on the verdict, plaintiff appealed.

*Isaac C. Wright and W. K. Rhodes, Jr., for plaintiff, appellant.*

*L. J. Poisson, Wm. B. Campbell, and Alan A. Marshall for defendant, appellee.*

DEVIN, J. The plaintiff, seeking relief from the unfavorable result below, has brought forward with her appeal several assignments of error relating to the admission of testimony, and also to the judge's charge to the jury. However, these exceptions become immaterial and the errors, if any, harmless, since we think the evidence insufficient to require the submission of the case to the jury, and that defendant's motion for judgment of nonsuit should have been allowed.

The evidence offered by the plaintiff tended to show that the injury complained of occurred at a point, north of the limits of the city of Wilmington, where a short east and west road, connecting two highways, crosses the defendant's railroad tracks at grade. The general direction of the railroad is north and south, and the crossing is about one mile north of the Smith Creek bridge. There are two tracks, the west track being the main line, and the east track a siding, the distance between the two tracks being about eight feet. On the sidetrack were two tank cars, one south and the other north of the crossing, the one forty feet from the road, and the other about nine or ten feet therefrom. The east and west road was level and straight for some three hundred yards. The paved

portion was eighteen feet wide, with shoulders of six and five feet. The usual signs indicating the railroad crossing were in place. There were some trees on the north side of the road near the crossing and cultivated fields on the south. The automobile in which plaintiff's intestate was riding was being driven west along the road toward the crossing, and at the same time defendant's freight train, composed of forty-nine cars, was proceeding north, up grade, at a speed of fifteen miles per hour. As one approached the crossing from the east, the crossing could be plainly seen for a distance of 225 to 295 feet. The tank cars on the sidetrack would obstruct the view to the north and south if one were on or near the crossing over the sidetrack, but there was no obstruction to the view of the crossing itself at any point along the road leading from the east.

The collision between the automobile and the train occurred about 11:10 p.m., 25 April, 1939. The automobile was being driven toward the crossing at a speed of sixty miles per hour. The driver was a young man named Russ, and, besides plaintiff's intestate, there were two others in the automobile, another young man and young woman. The engine and forty-one cars of the train had already passed over the crossing, and the automobile struck the rear of the forty-second car in the train, an aluminum colored tank car. The impact of the automobile was so violent that the rear trucks of the tank car were derailed and portions of the car broken. The automobile was smashed and the four occupants, including plaintiff's intestate, killed. The automobile was crushed and jammed against the tank car on the siding. There were skid marks on the pavement, made by the tires of the automobile, which extended back from the crossing two hundred feet. One of plaintiff's witnesses testified he did not hear whistle or bell as the train approached the crossing from the south. There was evidence to the contrary.

It is apparent from the speed of the automobile, and the length and speed of the train, that the engine was approximately one-third of a mile beyond the crossing when the automobile struck the forty-second car, and that the failure of the train crew to give timely warning by bell or whistle of the approach of the train, at the proper distance, before it reached the crossing did not affect the result. Sounding the whistle or bell at that time would not have served the driver of the automobile who then, at the speed at which he was traveling, was more than a mile away. The automobile was not struck by the engine at the crossing. The automobile struck near the rear of a long moving freight train when the cars in motion over the crossing were rendered plainly visible by the lights of the automobile. The injury is attributable to the high speed of the automobile, and the apparent failure of the driver to observe the moving train and his inability to stop the automobile, due to its speed, in time to avoid striking the train.

The conclusion is inescapable that the negligence of the driver of the automobile was the sole proximate cause of the unfortunate injury and death of plaintiff's intestate, and that the defendant railroad cannot be held liable therefor under the testimony in this case. Conceding that there was evidence of failure on the part of defendant to sound whistle or bell to give warning of the approach of the train to the crossing, it is clear that the active negligence of the driver of the automobile, subsequently operating, was the real efficient cause of the injury to plaintiff's intestate. *Powers v. Sternberg,* 213 N. C., 41, 195 S. E., 88; *Newell v. Darnell,* 209 N. C., 254, 183 S. E., 374; *Beach v. Patton,* 208 N. C., 134, 179 S. E., 446; *Haney v. Lincolnton,* 207 N. C., 282, 176 S. E., 560. Any negligence on the part of defendant in failing to give proper warning of the approach of the train to the crossing was insulated by the subsequent intervention of the active negligence of the driver of the automobile in striking the rear end of the moving freight train some appreciable time after the engine had passed the crossing. *Butner v. Spease,* 217 N. C., 82, 6 S. E. (2d), 808; *Quinn v. R. R.,* 213 N. C., 48, 195 S. E., 85; *Boyd v. R. R.,* 200 N. C., 324, 156 S. E., 507. Under the rule laid down in *Smith v. Sink,* 211 N. C., 725, 192 S. E., 108, we think the evidence here clearly shows that the injury complained of was independently and proximately produced by the active negligence of an independent agency in the person of the driver of the automobile.

The negligence of the driver of the automobile was patent. It intervened between the failure of the defendant to give warning of the approach of the train to the crossing and the injury to plaintiff's intestate, and it began to operate subsequent to any act of negligence on the part of defendant, and continued to operate to the instant of injury. *Ballinger v. Thomas,* 195 N. C., 517, 142 S. E., 761; *Hinnant v. R. R.,* 202 N. C., 489, 163 S. E., 555; *Baker v. R. R.,* 205 N. C., 329, 171 S. E., 342.

In *Herman v. R. R.,* 197 N. C., 718, 150 S. E., 361, Stacy, C. J., speaking for the Court, expressed the applicable principle in this language: "Even if the engineer or fireman did fail to ring the bell or sound the whistle, of which there is only negative testimony with positive evidence to the contrary, still the defendant had a right to operate the train over its track, and the negligence of the driver of the automobile is so palpable and gross, as shown by plaintiff's own witnesses, as to render his negligence the sole proximate cause of the injury."

It is apparent that the obstructions to the view of a person on or near the sidetrack, in looking to the north or south, did not affect the visibility of the crossing itself, or of the moving cars thereon, or prevent a person approaching the crossing along the road from the east from having a clear and unobstructed view of the train for a distance of 225

feet or more. This is not a case where the view of an approaching train is obstructed, and many of the principles of law relating to such cases are inapplicable. Here the engine and forty-one cars had already passed over the crossing, and the automobile collided with one of the rear cars of the train as the car was moving on the track over the crossing. It was in evidence that the automobile was being driven along the center of the paved portion of the road, and from the marks on the pavement it is apparent that the driver of the automobile applied his brakes two hundred feet from the crossing but was unable to stop. We conclude that the evidence does not warrant the reasonable inference of actionable negligence on the part of the defendant with respect to the visibility of the crossing or of the moving cars with which the automobile collided. The presence of the two tank cars on the siding in the position in which the evidence shows they were, may not be held the proximate cause of the injury. *Osborne v. Coal Co.,* 207 N. C., 545, 177 S. E., 796; *Gant v. Gant,* 197 N. C., 164, 148 S. E., 34.

Nor can we hold that it was the duty of the defendant to provide for this crossing signal lights, or a watchman at this hour of the night. While this was a public road, it was not a thoroughfare; it was in a rural section, and there were only a few houses along the two miles of the road's extent. There was no unusual amount of traffic, nor other evidence of unusual or hazardous conditions existing at the crossing so as to impose upon the railroad in the exercise of due care the further duty to provide such warning devices in addition to signaling the approach of the train to the crossing by sounding whistle or bell. *Caldwell v. R. R.,* 218 N. C., 63; *Moseley v. R. R.,* 197 N. C., 628, 150 S. E., 184.

For the reasons stated, there was no error in rendering judgment for the defendant.

No error.